UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:12-cv-22076-SEITZ/SIMONTON

CHANEL, INC.,

       Plaintiff,

v.

CHANELBAGSFORSALE-US.COM, *et al*,

       Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND CLOSING CASE

THIS CAUSE is before the Court on Plaintiff's Motion for Entry of Final Default Judgment [DE-32]. Plaintiff, Chanel, Inc. ("Chanel" or "Plaintiff") moves for final default judgment against Defendants, the Partnerships and Unincorporated Associations Identified on Schedules "A" and "B" hereto (collectively "Defendants") for alleged violations of the Lanham Act, codified at 15 U.S.C. §§ 1114, 1125(a), and 1125(d). As Defendants have failed to appear, plead or otherwise defend this action, and given the documentary evidence submitted in support of its motion, the Court shall grant Plaintiff's Motion for Final Default Judgment.

1

## I. Factual and Procedural Background

Chanel, Inc. ("Chanel") is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. (Compl. ¶ 3.) Chanel is engaged in the promotion, distribution, and sale in United States interstate commerce of high quality goods under the Chanel Marks. (Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ("Hahn Decl. in Support of Plaintiff's *Ex Parte* App.") ¶¶ 4, 5 [DE-5-4].) Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the following Federally registered trademarks:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,612,169 | September 13, 1955 | IC 014 - Necklaces |
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 – Women's Handbags |
| CHANEL | 0,902,190 | November 10, 1970 | IC 014 - Bracelets, Pins, and Earrings |
| CHANEL | 0,915,139 | June 15, 1971 | IC 025 - Women's Shoes |
| CHANEL | 0,955,074 | March 13, 1973 | IC 014 – Watches |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |

2

| | | | |
|---|---|---|---|
| ⓒ | 1,271,876 | March 27, 1984 | IC 025 - Clothing-Namely, Coats, Dresses, Blouses, Raincoats, Suits, Skirts, Cardigans, Sweaters, Pants, Jackets, Blazers, and Shoes |
| ⌘ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-namely, Handbags |
| ⌘ | 1,501,898 | August 30, 1988 | IC 006 – Keychains<br><br>IC 014 - Costume Jewelry<br><br>IC 016 - Gift Wrapping Paper<br><br>IC 025 -Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br><br>IC 026 – Brooches and Buttons for Clothing |
| CHANEL | 1,510,757 | November 1, 1988 | IC 009 – Sunglasses |
| ⌘ | 1,654,252 | August 20, 1991 | IC 009 – Sunglasses |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ⌘ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |

| | | | |
|---|---|---|---|
| ℃ | 3,025,934 | December 13, 2005 | IC 018 – Handbags |
| ℃ | 3,025,936 | December 13, 2005 | IC 009 - Eyeglass Frames, Sunglasses<br>IC 025 - Gloves, Swimwear<br>IC 026 - Hair Accessories namely Barrettes |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |

(the "Chanel Marks") which are registered on the Principal Register of the United States Patent and Trademark Office and are used in connection with the manufacture and distribution of high quality goods in the categories identified above. (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 4 and Comp. Ex. A attached thereto [DE 5-5]).

Defendants have advertised, offered for sale, and/or sold handbags, wallets, shoes, boots, sunglasses, watches, and costume jewelry, including necklaces, bracelets, and earrings bearing counterfeits, reproductions, and/or colorable imitations of the Chanel Marks. (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 11-16; Declaration of Eric Rosaler in Support of Plaintiff's Application for TRO ["Rosaler Decl. in Support of Plaintiff's *Ex Parte* App."] ¶ 4 and Comp. Ex. A thereto, [DE 5-8, 5-9]; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Motion for Entry of Final Default Judgment ["Gaffigan Decl. in Support of Motion for FDJ"] ¶¶ 3, 4; Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's Motion for Entry of Final Default Judgment ["Hahn Decl. in Support of Motion for FDJ"] ¶¶ 11-16; Declaration of Eric Rosaler in Support of Plaintiff's Motion for Entry of Final Default Judgment ["Rosaler Decl. in Support of Motion for FDJ"] ¶¶ 5, 6 and Comp. Ex. A attached thereto; and relevant web pages

from Defendants' Internet websites operating under the Subject Domain Names[1] ["Defendants' Websites"] attached as Comp. Ex. B to the Hahn Decl. in Support of Plaintiff's *Ex Parte* App. and attached as Comp. Ex. A to the Hahn Decl. in Support of Motion for FDJ.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Chanel Marks (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 9.)

Plaintiff retained Eric Rosaler ("Rosaler") of AED Investigations, Inc., a licensed private investigative firm in Florida, to investigate suspected sales of counterfeit Chanel branded products by Defendants. (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 10; Rosaler Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 3.) In May 2012, Rosaler accessed the Internet website operating under the domain name **chanelonlineshoppingusa.com**, and placed an order for the purchase of a Chanel branded handbag. (Rosaler Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 4 and Comp. Ex. A attached thereto.) Rosaler's purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of his order. (See id.)

Plaintiff's representative inspected and analyzed the handbag Rosaler purchased and received[2] via the **chanelonlineshoppingusa.com** website, as well as the web page listings and

---

[1] After the filing of the Complaint and the Application for TRO, Chanel discovered Defendants 6, 8, and 9 were wrongfully continuing to use the Chanel Marks in violation of the Preliminary Injunction [DE 18] by advertising, offering for sale, and selling various items under the Chanel Marks, without Chanel's authorization, in connection with the Internet websites operating under the additional domain names listed in Schedule "B" annexed hereto (the "Additional Domain Names.") (See Gaffigan Decl. in Support of Motion for FDJ ¶¶ 3, 4.) The Original Domain Names and the Additional Domain Names together are hereafter referred to as the "Subject Domain Names."

[2] Rosaler initially selected a chestnut colored Chanel branded handbag from the chanelonlineshoppingusa.com website; however, after he completed his purchase, the Defendant operating the chanelonlineshoppingusa.com website informed him that the original color he

detailed web page captures of the item, and she determined the handbag was a non-genuine Chanel product. (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶ 12; Hahn Decl. in Support of Plaintiff's Motion for FDJ ¶¶ 11, 12, 16.)

After the filing of the Complaint and Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "*Ex Parte* Application"), Chanel discovered that Defendant 6 chanelhandbags-home.com, Defendant 8 - chaneljewelryusa.com, and Defendant 9 - chanelonlineshoppingusa.com were wrongfully continuing to use the Chanel Marks in violation of the Preliminary Injunction (DE 18) by advertising, offering for sale, and selling various items under the Chanel Marks, without Chanel's authorization, in connection with the Internet websites operating the additional domain names listed in Schedule "B" annexed hereto, the Additional Domain Names. (*See* Hahn Decl. in Support of Motion for FDJ ¶ 13; Gaffigan Decl. in Support of Motion for FDJ ¶¶ 3, 4; *see also* Note 1, *infra*.) Hahn reviewed and visually inspected the items bearing the Chanel Marks offered for sale on the Internet websites operating under the partnership and unincorporated association names identified on Schedules A and B hereto, the Subject Domain Names, and she determined the products were non-genuine Chanel products. (Hahn Decl. in Support of Plaintiff's *Ex Parte* App. ¶¶ 13-15; Hahn Decl. in Support of Plaintiff's Motion for FDJ ¶¶ 14-16.)

On June 4, 2012, Plaintiff filed its Complaint against Defendants for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, and common law unfair competition. [DE-1]. On June 6, 2012, Plaintiff filed its *Ex Parte* Application. [DE-5]. On June 13, 2012, this Court issued an Order Granting Plaintiff's *Ex Parte* Application [DE-9],

---

selected was no longer available. (See Rosaler Decl. in Support of Motion for FDJ). Rosaler selected and received a black Chanel branded handbag in a similar style to the chestnut handbag he initially purchased via the chanelonlineshoppingusa.com website. (See id. and Comp. Ex. A attached thereto.)

temporarily restraining Defendants from infringing the Chanel Marks at issue. The Court further ordered Plaintiff to serve a copy of its *Ex Parte* Application and the Court's June 13, 2012 Order on Defendants via their known e-mail addresses and by posting a copy of the *Ex Parte* Application and the Court's June 13, 2012 Order on the Internet website http://servingnotice.com/bagagent/index.html. Plaintiff filed notices in compliance with the Court's Order on June 14, 2012 and June 22, 2012 [DE-10; DE-12], certifying service of the *Ex Parte* Application and supporting papers and of the Court's Temporary Restraining Order. Subsequently, the Court entered a Preliminary Injunction against Defendants on July 2, 2012. [DE-18.] On August 3, 2012, Plaintiff filed its Motion for Order Authorizing Alternate Service of Process [DE-21], which the Court granted on August 9, 2012. [DE-23.] On August 13, 2012, Defendants were served with their respective Summons and copies of the Complaint via e-mail service or via publication service pursuant to the Court's Order authorizing alternate service of process. [DE-23; DE-27; DE-28.]

On September 27, 2012, the Clerk of Court, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, entered default against Defendants for failure to appear, plead, or otherwise defend this action. (*See* DE-30.) To date, Defendants have not sought to vacate the default or otherwise appear and defend this action. On October 12, 2012, Plaintiff filed and served the instant motion for entry of final default judgment, to which Defendants have also failed to respond.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant, who, like Defendants here, failed to file a timely responsive pleading. By such a default, all of Plaintiff's well-pled allegations in the Complaint are deemed

7

admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Petmed Express, Inc. v. Medpots.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages. Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Petmed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). In this case, a hearing on damages is unnecessary as Plaintiff is not seeking damages.

### III. Liability

#### A. Trademark Infringement

The allegations in Plaintiff's Complaint, in conjunction with record evidence, support a finding of liability against Defendants for trademark infringement. "[T]o prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority; (2) defendant used its mark in commerce [without consent]; and (3) defendant's mark is likely to cause consumer confusion." *Petmed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1243 (11th Cir. 2002) and *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999)). Plaintiff has established each of these elements because: (1) Plaintiff's ownership and registration of the trademarks at issue precede Defendants' infringing conduct (Compl. ¶ 13; Hahn Decl. in Support of Plaintiff's *Ex Parte* App.¶ 4); (2) Defendants advertised, offered for sale and/or sold goods bearing Plaintiff's marks in interstate commerce without Plaintiff's consent (Compl. ¶ 28; Hahn Decl. in Support of

8

Plaintiff's *Ex Parte* App. ¶¶ 9-16 and Comp. Exs. B and C attached thereto; Hahn Decl. in Support of Motion for FDJ ¶¶ 14-16 and Comp. Ex. A attached thereto); and (3) the marks used on the goods Defendants advertised, offered for sale and/or sold are so similar to Plaintiff's marks that consumer confusion is likely. (Compl. ¶¶ 24, 30, Defendants' Websites attached as Comp. Ex. B to the Hahn Decl. in Support of Plaintiff's *Ex Parte* App. and attached as Comp. Ex. A to the Hahn Decl. in Support of Motion for FDJ.)

### B. False Designation of Origin

Plaintiff alleges false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The same set of facts allowing Plaintiff to prevail under § 1114(1)(a) will result in recovery under § 1125. *See Babbit Elecs.*, 38 F.3d at 1181 (11th Cir. 1994) (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *see also Clairol Inc. v. Save-Way Indus., Inc.*, 210 U.S.P.Q. 459, 469-70 (S.D. Fla. 1980). "This is because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or

not it involves trademark infringement." *Babbit Elecs.*, 38 F.3d at 1181 (citing *Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982)). As with trademark infringement claims, the test for liability for false designation of origin under § 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 763 (1992). As discussed above, Plaintiff has sufficiently shown there is a strong likelihood of confusion that arises because of the use by Defendants of the Chanel Marks. Thus, Plaintiff is entitled to default judgment on its false designation of origin claim.

### C. Cybersquatting

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), imposes liability upon a person for the bad faith intent to profit from a protected mark by registering or using a domain name that is identical or confusingly similar, or dilutive of, that mark. *Petmed Express*, 336 F. Supp. 2d at 1218. To prevail under 15 U.S.C. § 1125(d), Plaintiff must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the Defendant's domain name is identical or confusingly similar to the Plaintiff's mark; and (3) the Defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x 252, 256 (11th Cir. 2006). In this case, the well-pled allegations demonstrate Plaintiff's Marks are distinctive and famous, that the infringing domain names are confusingly similar, and that Defendants registered the cybersquatting domain names with the bad-faith intent to profit from them. As such, Defendants are liable for cybersquatting under 15 U.S.C. § 1125(d).

### D.     Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between plaintiff's and defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)"). Chanel has established there is a likelihood of confusion regarding Defendants' use of the Chanel Marks on their counterfeit and infringing products. Accordingly, Chanel has succeeded on the merits of its common law unfair competition claim.

### IV.     INJUNCTIVE RELIEF

Plaintiff is entitled to the requested injunctive relief pursuant to 15 U.S.C. § 1116. A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, the well-pled allegations and record evidence demonstrate that Plaintiff has developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from further infringement. Defendants' counterfeit products will create irreparable harm and confusion, particularly because the counterfeit products bear identical markings as real Chanel merchandise, and are not manufactured to Chanel's quality standards. Furthermore,

11

Defendants willfully infringed the Chanel Marks, and several of the Defendants continued to do so even after service of the Complaint in this matter upon them. Such willful conduct demonstrates a likelihood that Defendants would continue to harm Plaintiff's trademarks if the Court declined to issue an injunction. *Petmed Express*, 336 F. Supp. 2d 1222-23 (entering permanent injunction under 15 U.S.C. § 1116 to prevent further infringement of federally-protected trademarks).

## V.     Conclusion

For the reasons stated above, it is hereby

ORDERED THAT

(1)     Plaintiff's Motion for Entry of Final Default Judgment [DE-32] is GRANTED. Final Default Judgment in favor of Plaintiff Chanel, Inc. shall be ENTERED against Defendants, the Partnerships and Unincorporated Associations Identified on Schedules "A" and "B" hereto, with a separate Final Judgment to be issued concurrently with this Order.

(2)     This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 31st day of October, 2012.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

## SCHEDULE A
## ORIGINAL DOMAIN NAMES

| Defendant No. | Domain Name |
|---|---|
| 1 | chanelbagsforsale-us.com |
| 2 | chanelbagsforsaleusa.com |
| 3 | chanelbagsoutletu.net |
| 4 | chanelbagstores.net |
| 5 | chanelhandbagse.net |
| 6 | chanelhandbags-home.com |
| 7 | chaneljewelery2012.net |
| 8 | chaneljewelryusa.com |
| 9 | chanelonlineshoppingusa.com |
| 10 | chaneloutletonline2012.com |
| 11 | chaneloutletstore2012.com |
| 12 | chanelshoes2012.com |
| 13 | chanelshoesonline.net |
| 14 | chanelshopp.com |
| 15 | chanelstore-2012.com |
| 16 | chanelsunglassesale.net |
| 17 | cheapchanelhandbagsforsale.net |
| 18 | christianlouboutinshoesonline.org |
| 19 | official-chaneloutlet.com |
| 20 | online-christianlouboutinoutlet.net |

| 21 | sunglassesinsale.com |
| --- | --- |
| 22 | uk-cheaphandbagsonline.net |
| 23 | worldtopbags2012.com |

# SCHEDULE B
# ADDITIONAL DOMAIN NAMES

| Defendant No. | Domain Name |
|---|---|
| 6 | chanelhandbagshome.net |
| 6 | chanelbagsoutletu.com |
| 6 | chanelbags-home.net |
| 8 | chaneljewelryusa.net |
| 8 | chaneljewelryusa.org |
| 8 | cchaneloutlet.com |
| 8 | chaneloutletz.net |
| 8 | chaneloutletz.org |
| 8 | chaneljewelry-2012.org |
| 8 | chaneljewelry-2012.net |
| 8 | chaneljewelry-2012.com |
| 9 | chanelonlinestores.net |
| 9 | buychanelbagsonline.net |
| 9 | chanelpurses-forsale.com |
| 9 | chanelonlinestores.org |
| 9 | chanelhandbagsforsaleusa.com |
| 9 | chanelbags-usa.net |
| 9 | cheapchanelhandbagsforsale.com |
| 9 | chanelpursessale.net |